# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| HARLIE THOMPSON,<br>  *Plaintiff*,<br><br>  v.<br><br>LIEUTENANT MICHAUD *et al.*,<br>  *Defendants*. | No. 3:19-cv-1004 (JAM) |

**ORDER DISMISSING COMPLAINT PURSUANT TO 28 U.S.C. § 1915A**

  Plaintiff Harlie Thompson is a prisoner in the custody of the Connecticut Department of Correction ("DOC"). He has filed a complaint *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983 alleging that he was subject to the use of excessive force and denied his constitutional rights in connection with a disciplinary investigation and hearing. On the basis of an initial review pursuant to 28 U.S.C. §1915A, I conclude that Thompson has not alleged plausible grounds for relief against any of the four defendants he has named in his complaint. Accordingly, I will dismiss his complaint without prejudice to timely filing of an amended complaint.

## BACKGROUND

  The complaint names four defendants: Lieutenants Michaud and Ballaro of the Corrigan Correctional Institution ("Corrigan"), and Lieutenant Perez and Officer Leone of Northern Correctional Institution ("Northern"). The following facts as alleged in the complaint are assumed to be true solely for purposes of my initial evaluation of the complaint.

  On March 7, 2019, unnamed prison officials at Corrigan Correctional Institution ("Corrigan") extracted Thompson from his cell because he had covered his cell window while he was using the bathroom. *See* Doc. #1 at 5 (¶ 1). During the extraction, the officers kicked and punched Thompson in the face. *Id.* at 6. The officers used force against Thompson because he

was allegedly resisting and because he had participated in a protest involving the prison commissary. *Id.* at 5 (¶ 1). As officers escorted Thompson down the hall in handcuffs and leg shackles, someone sprayed a chemical agent in Thompson's face. *Id.* (¶ 2).

Thompson was taken away and transferred from Corrigan to Northern, and, when he arrived there, he had bruises and swelling on his eyes, face, and wrist. *Id.* at 5-6 (¶¶ 3-4). Thompson submitted two requests to the medical unit for treatment but did not receive medical care for these injuries. *Id.* at 6 (¶ 4), 7 (fourth bullet point).

On March 11, 2019, Thompson received a disciplinary report. *Id.* at 6 (¶ 5). The complaint does not further describe the basis for the disciplinary report. On March 12, 2019, Thompson and three other accused inmates decided to challenge the disciplinary charge at a hearing. *Id.* (¶ 6). Officer Leone asked the inmates "if we wanted to [be] witnesses for each other." *Ibid*. Thompson declined this opportunity. *Ibid*. Officer Leone did not offer Thompson the assistance of an advisor. *Ibid.* (stating that Thompson "never denied the use of an advisor, nor was I given the opportunity to be appointed one by Officer Leone").

The complaint further alleges that Thompson "was housed in Northern C.I.'s seg unit for 20 days, which is past the 14 calendar day limit, without receiving restrictive housing order, hearing notice prior to hearing, notification of hearing continuance, and never received a pending investigation form from the sending facility (Corrigan C.I.) in the first place." *Ibid.* (¶ 7) (capitalization normalized).

On March 27, 2019, Thompson participated in a disciplinary hearing. *Id.* (¶ 8). But Thompson objected that Officer Leone as the investigator was not allowed under DOC Administrative Directive 9.5 to attend the hearing. In addition, Thompson maintains that the

same administrative directive provides that "a receiving [facility] picks up the process where the sending unit left off with the disciplinary report, not the investigation." *Id.* (¶¶ 8-9).

The complaint alleges that Lt. Perez was the disciplinary hearing officer (DHO) for the hearing. Perez disregarded Thompson's objections to Leone's presence and to the investigation, saying that "none of what I said matters, all that matters is the ticket is saying I took part in the incident." *Id.* (¶ 9).

Thompson was found guilty, and his appeal was denied "because they knew if it was approved both facilit[ies] would have a lot of explaining to do, even though [they] still do because the unit manager didn't deliver the disciplinary report, nor did the unit administrator review the case within 72 hours." *Id.* (¶ 10).

Thompson alleges that he filed grievances about the incident. *Id.* at 7. The complaint seeks compensatory money damages for $500,000 for the attack by three officers on him in his cell. *Id.* at 6.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A

complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Lt. Michaud and Lt. Ballaro*

Thompson alleges that officers at Corrigan used excessive force when they removed him from his cell. But Thompson has not identified any of the officers who actually used excessive force against him. The complaint does not name any such officers as defendants or name them as "John Doe" defendants.[1] Although the caption of the complaint names two supervisory Corrigan officials as defendants in this action (Lt. Michaud and Lt. Ballaro), there is nothing in the body of the complaint that identifies them as personally taking part in any of the adverse actions against Thompson at Corrigan.

In the absence of any allegations showing the personal involvement of Michaud and Ballaro in the violation of any of Thompson's rights, there are no grounds for Thompson's excessive force or any other claim to proceed against Michaud and Ballaro. *See Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) (liability for constitutional violation under 42 U.S.C. §

---

[1] If a plaintiff's rights have been violated by a person whose name the plaintiff does not know, then a plaintiff may name that person as a "John Doe" defendant. The naming of a "John Doe" defendant serves merely as a placeholder for purposes of notice of the scope of the plaintiff's claim and to allow the plaintiff to conduct discovery in order to ascertain the true name of the "John Doe" defendant. *See, e.g., Abreu v. City of New York*, 657 F. Supp. 2d 357, 362–63 (E.D.N.Y. 2009). A plaintiff may not obtain monetary relief against unnamed "John Doe" defendants but must diligently take steps to learn the real names and identities of any "John Doe" defendants and then to promptly amend his pleadings within the statute of limitations period to substitute the real name of any defendant in place of a "John Doe" designation. *See, e.g., Hogan v. Fischer*, 738 F.3d 509, 517–20 (2d Cir. 2013).

1983 requires evidence of individual defendant's personal involvement in constitutional violation).

Accordingly, I will dismiss Thompson's claims against Lt. Michaud and Lt. Ballaro for failure to allege what actions they took that were wrong and in violation of any of Thompson's constitutional rights. I will likewise dismiss Thompson's excessive force claim for failure to name any defendants (whether by their true name or as "John Doe" defendants) who should be liable for any use of excessive force.

### *Officer Leone and Lt. Perez*

Thompson identifies Officer Leone as the investigator who was assigned to the disciplinary report and Lt. Perez as the disciplinary hearing officer. The Due Process Clause protects pretrial detainees from punishment without due process of law. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *Benjamin v. Fraser*, 264 F.3d 175, 188-89 (2d Cir. 2001).[2] To the extent that Thompson was subject to a disciplinary hearing and adverse consequences, Thompson was entitled to due process protections, including written notice of the charges, adequate time to prepare a defense, a fair and impartial hearing officer, a written statement of the reasons for the action taken and the evidence relied upon, and a limited ability to present witnesses and evidence at the hearing. *See Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974); *Benjamin*, 264 F.3d at 190.

Thompson alleges that Leone did not offer him the opportunity to have an advisor assist him to defend against the charge (it is unclear that Thompson asked for one). The Second Circuit has recognized that "a prisoner is entitled to assistance in 'marshaling evidence and presenting a

---

[2] It is unclear whether Thompson was a sentenced prisoner at the time of the events in question, and so I will assume solely for purposes of this ruling that he was a pretrial detainee. Ordinarily, a sentenced prisoner is not accorded due process protections from prison discipline unless the change in the prisoner's conditions of confinement constitutes an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995). This rule, however, does not apply to pretrial detainees, whose liberty interests have not been diminished by a criminal conviction and sentence of imprisonment. *See Benjamin*, 264 F.3d at 189.

5

defense' in advance of a prison disciplinary hearing, and that the assistance must be provided 'in good faith and the best interests of the inmate.'" *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009) (quoting *Eng v. Coughlin*, 858 F.2d 889, 897, 898 (2d Cir. 1988)). But any violation of this qualified right to assistance from an advisor is reviewed for harmless error. *See id.*; *see also Grant v. Fischer*, 760 F. App'x 20, 22 (2d Cir. 2019). Thompson does not allege any facts to show how any denial of assistance resulted in any prejudice to him at the disciplinary hearing. Accordingly, in the absence of any allegations to suggest that the denial of assistance caused prejudice, Thompson has not alleged plausible grounds for relief against Leone from any failure to afford him the assistance of an advisor to defend against the disciplinary hearing.

Thompson next complains that Lt. Perez violated the DOC's administrative directive by allowing Leone to be present at the hearing. The Due Process Clause, however, does not regulate which particular prison officials may be present at a disciplinary hearing. Accordingly, it did not violate Thompson's due process rights for Perez to allow Leone to be present at his disciplinary hearing.

So far as I understand the allegations of his complaint, Thompson further complains about the investigation continuing against him even after he had been transferred from Corrigan to Northern. But the Due Process Clause does not immunize a prisoner from being subject to investigation at one prison facility for misconduct that occurred at another prison facility. Accordingly, it did not violate Thompson's due process rights if he was subject to continuing investigation by Leone or other officials at Northern even after he had been transferred there from Corrigan.

Even assuming that the Due Process Clause afforded Thompson such protections, Thompson has not alleged any prejudice that he suffered as a result of Leone' presence at his

6

disciplinary hearing or any continuing investigation that occurred at Northern. To the extent that Thompson believes that the DOC's administrative directive barred Leone from attending the hearing or that it barred Leone from continuing to investigate him after his transfer to Northern, a violation of prison regulations does not—standing alone—amount to a violation of the Due Process Clause. *See Harris v. Taylor*, 441 F. App'x. 774, 775 (2d Cir. 2011).

### *Allegations Not Attributed to Any Defendant*

Thompson alleges that the unit administrator did not deliver the disciplinary report or conduct a case review within 72 hours. But Thompson has not named the unit administrator as a defendant in this case. Similarly, Thompson alleges that some unnamed official at Northern tried to coerce him into pleading guilty to the disciplinary charge, but he does not identify the official as a defendant in this case, much less does he allege any prejudice that resulted to him from any attempt to try to coerce him to plead guilty.

Thompson's allegations about deprivation of medical care fail for the same reason: he does not plead that the named defendants prevented him from receiving care, or should have but did not provide medical care; nor does he name anyone else involved in the deprivation of his medical care.

Thompson further alleges that he spent 20 days in segregation at Northern and that he did not receive a restrictive housing order, a hearing notice prior to his hearing, a notification of the hearing continuance, or a form advising him of the pending investigation. But the complaint fails to attribute any of these alleged omissions to Leone, Perez, or to any defendant. Nor does it allege how Thompson suffered any prejudice. Accordingly, even assuming that any of these omissions amounted to a violation of his rights, Thompson has not alleged facts to show the personal involvement of any defendant whom he seeks to hold liable.

7

## CONCLUSION

In accordance with the Court's initial review pursuant to 28 U.S.C. 1915A, the Court DISMISSES the complaint without prejudice. If Thompson believes that he can allege facts that overcome the deficiencies identified in this ruling and that he is prepared to include in the case caption the names of any defendants whom he seeks to hold liable (or using a "John Doe" designation to provisionally identify any person who he wishes to hold liable but does not know such person's name), then Thompson shall file an amended complaint by **January 16, 2020**.

Thompson should ensure that any defendant whom he seeks to hold liable is named in the caption of the complaint by the defendant's real name or as a "John Doe" defendant. For any named defendant, the body of the complaint must contain specific factual allegations about what each defendant did to violate plaintiff's rights. If Thompson chooses to name more than one "John Doe" defendant, then he should distinguish between such defendants by using the terms "John Doe #1," "John Doe #2," etc. Any amended complaint should state whether Thompson was a pretrial detainee or sentenced prisoner on the dates when he alleges that his constitutional rights were violated. Any amended complaint should also allege additional facts concerning the alleged basis for the disciplinary charge, and Thompson is encouraged to attach any paperwork if helpful to an understanding of the investigation and disciplinary hearing.

The Clerk of Court shall forthwith close this case subject to reopening in the event that Thompson chooses to timely file an amended complaint.

It is so ordered.

Dated at New Haven this 17th day of December 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge